All right. The Illinois Covenant Court Third Division is now in session. The Honorable Justice Barney Gordon is presiding. Everyone can be seated. Good morning. Call the first case, please. She called it. What? She called it. You did? Okay. All right. Would the lawyers who are presiding in the case please approach the bench and introduce yourselves to the court. Good morning, Your Honor. Should I leave my mask on or remove it? When you're speaking, you can take it off. David Harris on behalf of the appellant. DeShonta Young. Good morning, Your Honors. Ruth Estats on behalf of the people. Okay. As far as the appeal goes, are you going to reserve some time for rebuttal? Three minutes. Go ahead. It's S-T-O-T-T-S. That's not a microphone, okay? It just records. So you have to speak up a little bit. All right. Let's proceed. Go right ahead. Good morning, Your Honors. May it please the court. The complainant in this case, Dale Bragg, is a liar. He is a self-styled drug broker, a convicted felon whose past offenses include crimes of violence and crimes of dishonesty like check fraud. A manipulator, an unscrupulous person, someone who swore to tell a note at trial and instead gave the court, quote, a bunch of BS and, quote, crap. Well, I think you just cut out the language, right? Yes, I apologize. But these are not my opinions. This is the opinion of the trial judge in this case. Judge James Lynn found Dale Bragg to be the worst witness he had ever heard. However, in this case, his testimony was cooperated by Johnson. Yes, the court found that Bragg's testimony alone wasn't enough. He was such an unbelievable witness, he could not convict anyone on him and acquitted the four co-defendants. And in this case, he still found Dale Bragg unbelievable, still found him, called him an unscrupulous and manipulative witness, but found him guilty based on supposed corroboration from Cassandra Johnson. So let's talk about Cassandra Johnson's evidence. She testified at trial that nothing like a kidnapping happened in this case. She didn't see anyone being held against his will, but the court relied on her prior statement to the police. She said she told the police nothing untoward happened, but only after being threatened with felony charges and losing her kids, did she tell them what they wanted to hear. And your entire case here is based on the affidavit of two witnesses who did not witness the kidnapping. I don't think that's correct, Your Honor. Letecia Stewart says she was at the house at South Morgan where Dale Bragg said he was taken from at gunpoint. Whisked into the back of his car at gunpoint, while other people took the keys and drove his car. She's there, she sees Cedric Williams, supposedly one of the gunmen. She knows him, they catch up in chat, they exchange phone numbers, and when someone's at the driver's side of this black town car, Dale Bragg, says let's go make this money, Cedric and another man get in as passengers, and Dale Bragg drives away. So there was no forced kidnapping at gunpoint. But your witnesses did not witness the entire event. They just saw for a moment people walking. Correct, they saw that he was not kidnapped at gunpoint from the house at South Morgan. The other witness saw that he was not brought into the house in Harvey at gunpoint by four or five men with a jacket over his head. Lakeisha Perkins aversed that she was there and saw Dale Bragg drive up on his own accord in his black Lincoln town car with Cameron Folayle, and they walked in peaceably to the house. So the standard for advancing to a third stage or even for getting a new trial is not total exoneration. It's the probability or likelihood of a different outcome at trial if these witnesses are believed at this stage. And at the third stage, then their credibility can be challenged. So for the purposes of this court's decision, it is a fact that Dale Bragg was urging Cedric Williams and the other man who we know is Cullen Sellers on to go make this money early in the evening at the house at South Morgan. It is a fact that he lied under oath that he was taken at gunpoint. It's also a fact that he drove himself to the house in Harvey, not that he was brought in at gunpoint in the back of his car and led in with a jacket over his head by five men, including my client. It's a fact that he walked in with Cameron Folayle of his own accord. It's also a fact that my client wasn't there, at least until when Lakeisha Perkins leaves at around 2 a.m. While all this business is going on where he says people are hitting him and threatening to kill him, my client is not there. So for the purposes of this court's decision on actual innocence, those have to be accepted as facts. Those suddenly become not facts at an evidentiary hearing where the court can hear their testimony, weigh the credibility, and determine if it outweighs Dale Bragg. And we know Dale Bragg wasn't a credible witness to begin with. Well, you know why I think you might be missing the boat is that Bragg's testimony, you see, may have been what you consider not truthful in some senses. But that which was verified by Johnson, the court considered in finding the defendant guilty. So some of it he believed that he makes the credibility determinations. We don't. And we now have new witnesses that are telling the court, and it has to be believed at this point, that Dale Bragg perjured himself about being taken at gunpoint at the house at South Morgan and being let in at gunpoint and that my client was there at all. Even if you believe there was some kidnapping, it's a fact that my client wasn't there when all this stuff was going on until 2 a.m. Well, what about putting the testimony aside? And he said, she said, what about the fact that they discovered the fake money and the guns? Yes. That's actual material evidence. That fits exactly with the defense theory that Dale Bragg was this ringmaster concocting this fake drug buy that either was a setup to get his competitors. He's a drug broker, we might remember. He admits he's a drug broker. To get competitors off the street, there's evidence or affidavits that he owed money to one of his defendants. Or that he got cold feet about it and wrote in the FBI and the police to get these people arrested. That fits in with the defense evidence Cedric Williams testified to, Cassandra Johnson testified to as a stage witness. And that actually is part of when you look at this new evidence,  that Dale Bragg was the whole ringmaster of this insane circus that he claimed was a kidnapping. And Cassandra Johnson's statement, the court overlooked that it contradicted Dale Bragg on certain key points. Dale Bragg said Cedric Williams was the violent aggressor who hit him. Hit him specifically with a shoe. Cassandra Johnson's statement says that my client was the one who hit Dale Bragg with a shoe. Dale Bragg said Cedric Williams, Cameron Fulwiley, and Kelvin Sellers had guns. Cassandra Johnson takes the gun out of her boyfriend Fulwiley's hands, places it in my client's hands, and says my client had a gun. Dale Bragg never said my client had a gun. She admitted at trial she was trying to protect her boyfriend and keep him out of all of this. So there are contradictions here. Also, Cassandra Johnson's statement talks about someone, Ralph, who is apparently her cousin, being present this whole time. Dale Bragg never mentions anyone named Ralph. This actually corroborates Cedric Williams' testimony that Ralph was there. He was at the house, but they left him out of this drug deal that Dale Bragg set up. And again, you know, the fake money and everything corroborates the defense theory that Dale Bragg was leading this whole fake drug scandal. So you're trying to have us make credibility determinations. No, I'm asking the opposite. I'm asking that you can't challenge LaTessia Stewart and Lakeisha Perkins' credibility. So it's a fact that Dale Bragg perjured himself about being kidnapped at gunpoint at the house at South Morgan. If a fact finder is to believe LaTessia Stewart's testimony, then it necessarily has to disbelieve Dale Bragg's testimony about this. And the standard of the second stage is we believe these new evidence, unless they're positively rebutted by the record, which they're impossible to be true. And not that, as Robinson explains, that's not that they just contradict defense witness. I'm sorry. Would you agree we have to find that those affidavits are kind of conclusive of actual innocence? No. As Robinson also explains, it does not need to be dispositive of witnesses' evidence. It has to be sufficient to probably change the likelihood or change the outcome. Do you think Robinson changed the game? No, I think Robinson clarified the game. I think Robinson, as explained in his decision, it was clarifying his past decisions and differentiating between the stages of pleading stages versus third stage evidentiary hearing, and made it pretty clear that these facts have to be accepted as true. And so for this court's decision, it can't think that Dale Bragg was a witness who was telling at least a credible story. It has to believe that he perjured himself. So didn't that collapse the second stage then? I'm sorry, I don't understand. Make it pleading, accepting it as true, and we're going to an evidentiary hearing. Aren't we kind of eliminating the second stage then? Well, we're at the first and second stage of pleading stages. And at the second stage, as you're aware, is when the state can have input and move to dismiss. But their motion to dismiss has to accept the defense evidence as true. Unless? Unless it's positively rebutted by the record. Which is a big unless. So wouldn't you say that there was – I'm sorry, I'm forgetting the witness's name. Johnson. Cassandra Johnson. Yes. Wouldn't you say that that refutes the new witness's testimony? No. And Pieper v. Robinson makes this perfectly clear that, of course, evidence of innocence will always contradict evidence of guilt. We're only at this point because there was evidence that led to a guilty conviction. And an actual innocence claim will have evidence that contradicts it. It doesn't mean that that's rebutted. Rebutted is when Robinson distinguished an earlier case where an autopsy rebutted a claim of, you know, shooting in a different location or the number of shots, I believe it was. Or if there's video evidence or something like that where it cannot ever be accepted as true by the fact finder. Here, when it's just – would end up being a credibility contest between the new witnesses and the old, the court has to, at this first and second stage, resolve credibility in favor of the defense witnesses and the defense evidence. The state, when they move to dismiss, even just as in the Silver case, accepts the pleadings as true and says there's no issue here. So, if a defense – if these new defense witnesses are believed by a trial of fact, would it change the result? Is it probable that it would change the result of a new trial? And when you have the worst witness the judge had ever seen, corroborated supposedly by Cassandra Johnson's testimony that the court believed was essentially coerced through these threats of felony charges, and this terrible witness on whose word four other defendants were acquitted, of course, if we now believe he's lying about being taken at gunpoint, we now believe he's lying about being let into this house at gunpoint by four or five men, we now believe my client wasn't there, the likelihood of a different outcome is sufficient to get this evidentiary hearing. And then it's up to the trial court to hear their testimony, determine the credibility and see if this corroborates the defense evidence we already heard at trial enough to outweigh the state's evidence. But that weighing, that credibility weighing cannot be done at this stage. So, it's a fact he wasn't there. It's a fact Bragg wasn't taken at gunpoint. It's a fact he wasn't forced into the house at gunpoint. He's the one driving his own car. And, therefore, he's perjuring himself, because these are completely diametrically opposed stories. Now, you're passing your time. You want to save some time for rebuttal? Yes. I would just also like to point out that we raised that this evidence alone, even without this new evidence, was insufficient. It never should have been enough to convict, and appellate counsel should have raised it on appeal, and this court should find that this evidence with the worst witness the judge had ever seen, a manipulator corroborated by this statement that was coerced with felony charges and contradicted Dale Bragg on key points wasn't enough, and it should reverse this conviction. Thank you. Okay. Let's hear from the state. May it please the court, counsel, read the stats from the state's terms office for the people. It's not true that just because a defendant submits an affidavit saying he didn't do it, you assume he didn't do it and automatically sent him to the third stage. The portion of Robinson the defendant cites in his reply deals with the leave to file a successive standard. We are past that. We are at the second stage. He needs a substantial showing on all three elements of the innocence claim. He hasn't made it. It sounded like in the discussion that just happened that counsel might have suggested that Stewart identified Bragg as one of the people outside the house on South Morgan. She did not. She said she saw Williams and two other men, one light-skinned, one dark-skinned. So the idea that she saw Bragg there being not kidnapped is pure speculation. We don't know who the other men were. And then, you know, petitioner is talking about Bragg's credibility. I just want to make it clear those negative credibility findings were made at the first trial. The judge completely changed course at this trial. He said, one, Bragg testified better. He was more credible for whatever reason. And two, he was corroborated. So basically the judge said he got it wrong when he didn't believe Bragg the first time around. He shouldn't have acquitted the co-defendants. But the fact that they were acquitted doesn't help this petitioner. The evidence was sufficient. And the judge explained over and over why he found Bragg credible. What about their argument regarding the recovered guns and fake money that actually corroborates their defense? It doesn't. It corroborates Bragg's account. It's true he has affidavits that say they were on the scheme with fake money to rip off someone else. That part of it is correct. So as to the innocence claim, petitioner hasn't made a substantial showing on any of the prongs. First, for newness, Stewart and Perkins were known to at least two co-defendants. That's Williams and Fulwiley. They submitted affidavits in 2011. Williams said he remembers Stewart being there. He talked to her. They exchanged phone numbers. Fulwiley says the same thing. Perkins was supposedly the security guard outside Fulwiley's drug house in Harvey. Fulwiley says, yes, I paid her to do security. And Williams also corroborates she was there. So all petitioner had to do, even before trial, ask his co-defendants, hey, do you guys know of any witnesses who were around these crime scenes? No reason to think that wouldn't have worked. Again, Perkins was supposedly an employee of Fulwiley. Williams had Stewart's phone number, if these affidavits are true. Nothing to suggest Stewart and Perkins wouldn't have cooperated. Nothing to suggest Fulwiley and Williams wouldn't have helped petitioner. Fulwiley was petitioner's friend. And Williams actually testified at petitioner's trial. So there's no due diligence in finding these witnesses. What about the argument that these people didn't come into existence until they started putting out the flyers in the community? It's true they didn't come. The record suggests they didn't come forward on their own until 2011. They say they saw flyers in the neighborhood nine years later. But the question is not whether witnesses come forward on their own. The question is whether the petitioner is exercising reasonable diligence in bringing forth his evidence of innocence. So he waits nine years. He doesn't ask his co-defendant, hey, was anyone at these crime scenes? He says in the reply, he seems to suggest he didn't know where the crime scenes were. He got all kinds of discovery. There are police reports in the record listing the addresses of both crime scenes. And he had the co-defendant's trial first. And there are references in the record to his defense attorney obtaining transcripts. So he knew the state's whole theory of the case. But the co-defendants didn't call Perkins and Stewart, did they? They didn't need to. They got acquitted. But there's nothing to suggest they wouldn't have revealed this to petitioner, again, assuming these affidavits are true that both women were there. The evidence also isn't material and non-cumulative. And that's because Stewart and Perkins each only claim to have seen a small part of an ongoing offense that took two days and spanned multiple crime scenes. So, again, Stewart doesn't identify Bragg as one of the people she saw. Perkins just says she's outside the drug house. So she can't say anything to defeat the people's evidence that Bragg was actually taken off the street at the other location. So it's not material. And it also is somewhat cumulative of the theory that was offered at trial through Williams and Johnson, which was that Bragg was part of this voluntarily. As to conclusiveness, their evidence of Stewart and Perkins is either totally unhelpful or just so weak compared to the state's evidence that it's not sufficiently conclusive to get to a hearing. On Stewart, she says petitioner wasn't at the house on South Morgan, but we never claimed he was. The state's theory was two different kidnappers took him off the street. Petitioner came into play at the basement of the drug house in Harvey. And, again, she can't say Bragg wasn't kidnapped because she doesn't ID Bragg as one of the people she saw. So Stewart is pretty useless. For Perkins, part of her evidence is consistent with the state's theory. She says she sees Phil Wiley and Bragg entering Phil Wiley's house that night. That's consistent with Bragg's testimony that he convinced the kidnappers to take him to his condo to dig up these drugs that were supposedly buried in the yard. They didn't find them and they came back. Perkins also says the next morning she sees Bragg, Williams, and Phil Wiley leaving in two cars, the black town car and the red car. That's consistent with Bragg's testimony that those three left in those cars to go to UIC to supposedly meet the supplier the next morning. So the only part that's potentially helpful is this idea that she's sitting outside Phil Wiley's house working her security shift for eight straight hours, 6 p.m. to 2 a.m. Supposedly she never looks away or takes a break or falls asleep and she can tell the whole time Petitioner doesn't enter. That's somewhat implausible. It's also implausible because she didn't know Petitioner. Her affidavit says she saw the flyer nine years later, looked him up on the website, saw his picture, and was somehow able to remember that she did not see him nine years earlier. A stranger, she would have no reason to remember. That part's implausible too. And even if you credit all this, that Petitioner didn't enter the house during that eight-hour span, it still doesn't show innocence because we didn't need to put him entering the house at any certain time. All Bragg said was that Petitioner was in the basement when he got there, so he could have arrived earlier. So for all those reasons, he hasn't made a substantial showing on any of the three elements and the innocence claim was properly dismissed. And as to the sufficiency, Petitioner says his post-conviction appeal counsel was ineffective for failing to raise a claim that direct appeal counsel was ineffective for failing to challenge sufficiency. This evidence was more than sufficient. We've got Bragg's detailed testimony corroborated by Johnson's statements. We've got the fake money and the gun found. Petitioner's arguments here are really asking the court to re-weigh witness credibility, which is not part of the sufficiency inquiry. And in any case, I'd point the court to the detailed findings set out in our brief where the judge repeatedly explains why he found these witnesses credible. And so unless there are any questions. I have a question that's very troublesome to me. The other defendants at the bench trial, Johnson didn't testify against them. Why would the state not bring in an important witness like that against those defendants? I'm sorry. I don't know the answer. And that may have been a mistake. I don't know. But here against this defendant, they bring in Johnson. And it seems that in many cases, the state's attorney doesn't put out all the witnesses that they need to put out to find somebody guilty. It seems to be a history in this state where there is evidence against people, but the state doesn't present that evidence. You can't tell me why that happens. I'm sorry, Your Honor. I don't know. Very troublesome. Okay. Thank you. Thank you. Counsel was just saying how these new witnesses' claims are implausible, and that sounds like a challenge to the credibility, which can only be done at an evidentiary hearing at the third stage or a third stage appeal. There was discussion about these witnesses being newly discovered. I would direct this court to People v. Ortiz, the Supreme Court decision,  and I believe a decision Your Honor wrote in the appellate court, finding witnesses newly discovered even where the defendant was present at the scene of the offense. He was just in a position where he wouldn't see this new witness, even though other people there would have seen him. It puts the focus, both in Your Honor's opinion and in the Supreme Court decision, on what the defendant knew or was aware of, not a reliance on third parties and what they may have known. To revisit Robinson, I think that was discussed in paragraph 60. They talk about how it's not about being rebutted. It isn't that there's contradictions with the trial evidence. It's that no fact finder could ever accept the truth of these allegations. It's not whether it's inconsistent. It's whether it can never be accepted as true. And when it's testimony against testimony, one version could be accepted as true. For this court's decision in this appeal, it has to accept LaTessia Stewart and Lakeisha Perkins' version as true. There was talk about what LaTessia Stewart saw at the house at South Morgan, Cedric Williams, the state's now arguing, well, it's not clear that the other man with this black Lincoln town car was Dale Bragg, even though throughout the trial and the documents, that's his car. That's different than the position in the brief where they wrote about him as Dale Bragg on page 21 of their brief. He was the one saying, let's go make this money. And that fits perfectly with Cedric Williams' testimony at trial and the defense evidence that even from early on, not some scheme he developed overnight, but early on he was devising a scheme for this fake drug deal. The state also just argued that the credibility findings I discussed by the judge in this case were at the first trial, not the second trial. But at the second trial, even though he found my client guilty, he said all these things I said, that Dale Bragg was an unscrupulous manipulator. He agreed with the defense counsel's argument that it was full of stuff. In other words, I won't repeat, and said the defense counsel, everything he said the defense counsel said was accurate and may not have gone far enough. He may have undersold how bad of a witness Dale Bragg was. That's what he said at this trial, not the earlier trial. And it's obvious that he was. I mean, he said he was held against his will, but Cameron Forwiley and these women and kids at the house go to bed. He's left on the couch by the front door. He doesn't just walk out the front door. If you're being kidnapped, you just walk out the front door. He said twice on direct and cross. He didn't because he thought opening the door and leaving would wake them up in the bedroom. He was so scared of waking them up that instead he opened their bedroom door and snuck in and took their phone, went to the kitchen, called the police, snuck back in, put it back, and went to the living room to wait for his kidnapping to resume. This is not a man who's telling a story. He's twisted around in his own lies. He also appears to not have asked the police to come rescue him because they didn't show up that morning at the house. And he had a cell phone with him. FBI agent Jay Deren said he missed some calls from Dale Bragg overnight from Dale Bragg's phone number. He could have called for a ride, walked out the door, and gone on his merry way. No, this fits the story of a man who is the ringmaster of this entire circus and set these people up to get arrested. Accepting these new affidavits is true. This has to go to an evidentiary hearing where their credibility can finally be challenged and weighed in the first instance by the trial court. Thank you. Thank you very much. Thank you. I want to thank both of you for some good arguments and some good briefs, and we'll have a decision for you shortly.